Salina M. Kanai #8096
Federal Public Defender
District of Hawaii

Craig W. Jerome #8797
First Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii 96850-5269
Telephone:   (808) 541-2521
Facsimile:   (808) 541-3545
E-Mail:       craig_jerome@fd.org

Attorneys for Defendant
Christopher Chan

In the United States District Court for the District of Hawaii

| | |
|---|---|
| United States of America,<br>        Plaintiff,<br><br>    v.<br><br>Christopher Chan,<br>        Defendant. | Cr. No. 1:22-cr-00109-DKW<br><br>Motion to Dismiss Count 1 of the Second Superseding Indictment; Table of Authorities; Exhibit A; Certificate of Service |

### Motion to Dismiss Count 1 of the Second Superseding Indictment

Defendant Christopher Chan, through counsel, hereby moves to dismiss Count 1 of the Second Superseding Indictment (ECF No. 71), which accuses Chan of possessing an unregistered short-barrel rifle in violation of 26 U.S.C. §§5841, 5845(a)(3), 5861(d), and 5871. The primary reason this motion should be granted is because the indictment's recitation of the essential facts alleged against Chan establishes, as a matter of law, that Count 1 does not state the federal offense of possession of an unregistered short-barrel rifle.

Moreover, any attempt to "save" Count 1 by construing it to charge the offense of possession of an unregistered machinegun (rather than a short-barrel rifle) fails for two reasons. The first is that such a construction of Count 1 would render it multiplicitous with Count 2. The second is that such a construction would trigger dismissal on the ground that charging Chan with the offense of possession of an unregistered machinegun is unconstitutional. The constitutional issue arises largely from the history of federal machinegun regulation and the fact that it is no longer possible under federal law to register any machinegun. Federal law cannot make it a crime to not do something that federal law makes it impossible to do.

## I. Count 1 fails to state an offense and should be dismissed.

The law applicable to Chan's claim that this Court should dismiss Count 1 for failure to state an offense is well settled. "An indictment must provide the essential facts necessary to apprise a defendant of the crime charged[.]" *United States v. Cochrane*, 985 F.2d 1027, 1031 (CA9 1993). The "indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *United States v. Berger*, 473 F.3d 1080, 1103 (CA9 2007) (quotation marks omitted); *see also, e.g.*, *United States v. Williams*, 8 F.Supp.3d 1219, 1224 (D. Haw. 2014) (collecting circuit authority holding that an indictment must be read "as a whole"). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment[.]" *United States v. Boren*, 278 F.3d 911, 914 (CA9 2002). And, when the

essential facts recited in the indictment reflect that a count fails to state an offense, this Court should dismiss the defective count. *Boren*, 278 F.3d at 914.

As noted at the outset, Count 1 of the indictment accuses Chan of possessing an unregistered firearm in violation of 26 U.S.C. §§5841, 5845(a)(3), 5861(d), and 5871. ECF No. 71. Count 1 identifies the firearm that Chan allegedly possessed as a "privately made AR-type rifle, containing no serial number or appropriate manufacturer markings, with a barrel length measuring less than 16 inches in length[.]" *Id.* at p. 2. Count 1 further specifies that the firearm predicating Count 1 was "found in a Toyota Camry automobile." *Id.*

Considering the indictment as a whole, Count 2 accuses Chan of possessing a firearm that was "a machinegun," in violation of 18 U.S.C. §§922(o), 924(a)(2), and 26 U.S.C. §5845(b). ECF No. 71 at p. 2. Count 2 identifies its predicate firearm as "the privately made AR-type rifle described in Count 1" and again specifies that the gun was "found in a Toyota Camry automobile." *Id.* at p. 3. Count 2, however, adds an additional essential fact about the gun—that it "was installed" with a "machinegun conversion device[,]" which "did shoot and was designed to shoot automatically more than one shot without manual reloading by a single function of the trigger[.]" *Id.* at 3. This latter fact, which this Court must accept as true for purposes of ruling on this motion, establishes, as a matter of law, that the firearm at issue here was not a "rifle" and, thus, that Count 1 fails to state the offense of possession of an unregistered rifle in violation of §§5841, 5845(a)(3), 5861(d), and 5871.

Section 5861(d) makes it a crime for a person to receive or possess a firearm that is not registered to him in the National Firearms Registration and Transfer Record. As pertinent to Count 1, section 5845(a)(3) defines the term "firearm" to include: "a rifle having a barrel or barrels of less than 16 inches in length." 26 U.S.C. §5845(a)(3); accord ECF No. 71 at p. 2 (accusing Chan of violating §5845(a)(3)). The hiccup lies in the definition of what counts as a "rifle" under §5845's statutory definition of a firearm.

Section 5845(c) defines a "rifle" as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge *to fire only a single projectile through a rifled bore for each single pull of the trigger*[.]" 26 U.S.C. §5845(c) (emphasis added). This is the inconsistency that plagues the two charges set out in the second superseding indictment. A machinegun designed to fire more than one shot for each single function of the trigger is not, and cannot be, a rifle designed to fire only one shot for each single pull of the trigger.

Count 1 thus fails to state an offense when Count 1 is read in conjunction with Count 2. The essential facts averred in support of Count 2 state that the firearm predicating both counts of the indictment "did shoot and was designed to shoot automatically *more than one shot without manual reloading by a single function of the trigger.*" ECF No. 71 (emphasis added); *see also* 26 U.S.C. §5845(b) (defining "machinegun" to mean "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual

4

reloading, by a single function of the trigger"). Because this Court must accept as true the allegation that the AR-type firearm predicating both Counts 1 and 2 was designed to shoot, and did shoot, more than one projectile for each single pull of the trigger, that firearm cannot be, as a matter of law, a "rifle" as defined in §5845(a)(3). Count 1, therefore, fails to state the offense of possession of an unregistered short-barrel rifle, and it must be dismissed.

> II. **If construed to allege possession of an unregistered machinegun instead of a rifle, Count 1 should then be dismissed on the ground that it is multiplicitous with Count 2.**

Section 5861, of course, makes it a crime to receive or possess any unregistered "firearm," as that term is defined in §5845. Machineguns are also "firearms" that must be registered under federal law. *See* 26 U.S.C. §5845(a)(6); 5861(d). The government may suggest that Count 1 can be "saved" by construing it to charge possession of an unregistered machinegun, rather than possession of an unregistered short-barrel rifle. Count 1's explicit statutory recitation of §5845(a)*(3)* (the rifle provision) and *not* §5845(a)*(6)* (the machinegun provision) makes that a difficult ask to grant. But even if Count 1 is construed to rely on the machinegun provision of §5845(a)(6), a new problem arises, because Counts 1 and 2 would then be impermissibly multiplicitous.

"An indictment is multiplicitous if it charges a single offense in multiple counts." *United States v. Wahchumwah*, 710 F.3d 862, 868 (CA9 2013). A multiplicitous indictment raises double jeopardy concerns because of "the possibility that the defendant will receive more than one sentence for a single offense." *See, e.g., United States v. Reedy,* 304 F.3d 358, 363 (CA5 2002). A second danger raised

by a multiplicitous indictment is that it "may suggest to the jury that the defendant committed more than one crime." *United States v. Christner*, 66 F.3d 922, 927 (CA8 1995) (quoting *United States v. Dixon*, 921 F.2d 194, 196 (CA8 1990)). "Generally stated, 'when a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other.'" *United States v. Overton*, 573 F.3d 679, 690 (CA9 2009) (quoting *United States v. Davenport*, 519 F.3d 940, 947-48 (CA9 2008)). "The test for determining whether two statutes define the same offense is … whether each provision requires proof of a fact which the other does not." *United States v. Kuzma*, 967 F.3d 959, 977 (CA9 2020) (quotation marks omitted).

Applying that test, *Kuzma* held that possessing a machinegun, in violation of §922(o) and §5845(a)(6), is a lesser included offense of possessing an unregistered machinegun, in violation of §5861(d). *Kuzma*, 967 F.3d at 977. Congress, moreover, did not authorize cumulative punishments to be imposed simultaneously for both offenses. *Id.* The Ninth Circuit therefore held that Kuzma could not be convicted under both provisions, because such convictions were impermissibly multiplicitous. *Id.* at 976-77; *see also United States v. Mann,* 701 F.3d 274, 285-86 (CA8 2012) (holding that two counts of an indictment charging violations of §922(o) and §5861(d) were multiplicitous). In accord with *Kuzma*, any attempt to "save" Count 1 by construing it to charge the offense of possession of a machinegun, rather than a

6

rifle, necessarily fails, because such a construction of Count 1 renders it impermissibly multiplicitous with Count 2.

Moreover, as elaborated in the next section of this motion, dismissal of Count 1 on this basis is consistent with longstanding Department of Justice policy. The policy provides:

> Section 922(o) of Title 18 makes it unlawful to transfer or possess a machinegun made after May 19, 1986. In addition, under the NFA, it is unlawful to manufacture or possess a machinegun without first registering it with the Secretary of the Treasury and paying applicable taxes. 26 U.S.C. §§ 5822, 5861. As a result of the enactment of 18 U.S.C. § 922(o), the Secretary of the Treasury no longer will register or accept any tax payments to make or transfer a machinegun made after May 19, 1986. Accordingly, because it is impossible to comply with the registration and taxation provisions in the NFA, prosecutors should charge the unlawful possession or transfer of a machinegun made after May 19, 1986 under § 922(o).

U.S. Justice Manual §9-63-516, 1999 WL 33219894. This policy, as the history discussed in the next section suggests, appears to have been adopted due to the constitutional doubt that would arise from, among other things, prosecuting someone for not doing something that there is no way to do. *Cf. Iraheta-Martinez v. Garland*, 12 F.4th 942, 953 (CA9 2021) ("[u]nder the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems" (quoting *Jennings v. Rodriguez*, 138 S.Ct. 830, 836 (2018))).

7

In accord with DOJ policy and *Kuzma*, dismissal of Count 1 is necessary even if Count 1 is construed to charge possession of an unregistered machinegun instead of a short-barrel rifle.

### III. If Count 1 is construed to charge possession of an unregistered machinegun instead of a rifle, Count 1 should be dismissed because the National Firearms Act is unconstitutional as applied to the possession of unregistered machineguns.

The constitutionality of a prosecution for possessing an unregistered machinegun is raised here for two reasons. The first is to explain the constitutional doubt that counsels against construing Count 1 to charge possession of an unregistered machinegun. The second is to preserve the constitutional claim for further review, because Chan believes the Ninth Circuit's precedent—rejecting challenges to convictions for possessing an unregistered machinegun—is wrongly decided. Chan recognizes that such precedent presently binds this Court. But the constitutional argument, as sketched below, is persuasive nonetheless.

Federal regulation of machineguns started with the National Firearms Act (NFA) of 1934, which placed a tax on making, transferring, and possessing machineguns and other NFA firearms. The NFA also "makes it unlawful for private citizens to possess unregistered firearms, and mandates denial of any application for registration of a firearm the possession of which is illegal." *Hunter v. United States*, 73 F.3d 260, 261 (CA9 1996) (per curiam). Congress passed the NFA, and the Supreme Court affirmed it, under Congress's taxing authority. *See* U.S. Const., art. I, §8, cl. 1 (congressional taxing power); *Sonzinsky v. United States*, 300 U.S. 506 (1937).

8

In 1986, however, Congress passed the Firearm Owners' Protection Act (FOPA). The FOPA criminalizes possession of any machinegun that was not lawfully possessed prior to May 19, 1986, the day the act went into effect. *See* 18 U.S.C. §922(o); *Hunter*, 73 F.3d at 261. Since its enactment, the FOPA has made it "impossible to comply with the National Firearm Act's registration requirement with respect to machine guns not lawfully possessed before May 19, 1986." *Hunter*, 73 F.3d at 261. Because of the FOPA's machinegun ban, the government "has ceased collecting the NFA's tax as to machineguns. *See* 27 C.F.R. §479.105. It has also ceased registering them. *See id.;* 26 U.S.C. §5822 (applications to register a firearm under the NFA "shall be denied if the making or possession of the firearm would place the person making the firearm in violation of law"). And, as noted above, the government has abandoned prosecution under the NFA of possession of unregistered machineguns and, instead, calls for charging those who unlawfully possess a machinegun under the FOPA and, specifically, 18 U.S.C. §922(o). *See* U.S. Justice Manual §9-63.516, 1999 WL 33219894. All of this significantly, if not entirely, undermines the constitutional hook—congressional taxing authority—on which NFA was enacted and originally affirmed.

The Tenth Circuit has, accordingly, sensibly struck down the NFA's prohibition on the possession of unregistered machineguns. *See United States v. Dalton*, 960 F.2d 121 (CA10 1992). The Tenth Circuit there recognized that compliance with the NFA's registration requirements "is impossible" as to machineguns. *Dalton*, 960 F.2d at 123. And the Tenth Circuit reasoned "that

9

because the registration requirements of the National Firearms Act were passed pursuant to the taxing power, and because after the enactment of section 922(o) the government will no longer register or tax machineguns, section 922(o) has removed the constitutional legitimacy of registration as an aid to taxation," and, thus, section 922(o) has "undercut the constitutional basis of registration which has been the rule" since *Sonzinsky* first upheld the NFA. *Dalton*, 960 F.2d at 124–125. The Tenth Circuit accordingly vacated Dalton's conviction for possession of an unregistered machinegun and remanded for dismissal. *See Dalton*, 960 F.2d at 126.

Creating a circuit split, the Fourth Circuit reached the opposite result in *United States v. Jones*, 976 F.2d 176 (CA4 1992). The Fourth Circuit took the view that, even after FOPA, making an illegal machinegun "continues to be taxed," spotted no daylight between making an illegal machinegun and possessing one, and concluded that, in accord with *Sonzinsky*, "knowing the chain of possession and transfer assists in determining who made the firearm and hence is supportable as in aid of a revenue purpose." *Jones*, 976 F.2d at 183–184. In *Hunter*, the Ninth Circuit sided with *Jones*. More recently, the Ninth Circuit affirmed its agreement with *Jones* and its rejection of *Dalton*, albeit in an unpublished case. *See United States v. Bronsozian*, 764 Fed. App'x 633 (CA9) (Apr. 15, 2019) (unpublished).

Notable, however, is that the government has shied away from the *Jones* view and averted further Supreme Court review of this issue, by successfully moving to dismiss the unregistered machinegun charge against Bronsozian while his petition for certiorari, inviting the Supreme Court to resolve the circuit split,

10

was pending. *See Bronsozian v. United States* (No. 19-6220), Brief for the United States at 2, 5–6 (March 2020) (attached as Exhibit A); *Bronsozian v. United States*, 140 S.Ct. 2663 (Apr. 20, 2020) (order granting, vacating, and remanding in light of the government's pending dismissal motion); *United States v. Bronsozian*, 810 Fed. App'x 562 (CA9) (June 24, 2020) (order remanding for dismissal).

As has been noted, Chan does not dispute that *Hunter* presently binds this Court to adhere to the idea that prosecuting someone for possessing an unregistered machinegun, which he cannot register and for which he cannot pay the requisite tax under federal law, is constitutional. He raises the point nonetheless to preserve it for further review, because the Supreme Court, or an en banc panel of the Ninth Circuit, may well sensibly conclude that §5861(d) is unconstitutional as applied to unregistered machineguns.

## IV. Conclusion

In accord with the foregoing, and any further litigation on this motion, this Court should dismiss Count 1 of the Second Superseding Indictment.

Date: Honolulu, Hawaii, April 23, 2024.

/s/ Craig W. Jerome
Craig W. Jerome
First Assistant Federal Defender
Attorney for Defendant
Christopher Chan

Table of Authorities

### Cases

*Bronsozian v. United States*, 140 S.Ct. 2663 (mem) (Apr. 20, 2020). ...................... 11
*Hunter v. United States*, 73 F.3d 260 (CA9 1996) (per curiam). ............... 8, 9, 10, 11
*Iraheta-Martinez v. Garland*, 12 F.4th 942 (CA9 2021). ........................................... 7
*Jennings v. Rodriguez*, 138 S.Ct. 830 (2018). ...................................................... 7
*Sonzinsky v. United States*, 300 U.S. 506 (1937). ................................................ 8, 10
*United States v. Berger*, 473 F.3d 1080 (CA9 2007). .............................................. 2
*United States v. Boren*, 278 F.3d 911 (CA9 2002). ............................................. 2, 3
*United States v. Bronsozian*,
    764 Fed. App'x 633 (CA9) (Apr. 15, 2019) (unpublished). ............................ 10
*United States v. Bronsozian*, 810 Fed. App'x 562 (CA9) (June 24, 2020) (order). .. 11
*United States v. Christner*, 66 F.3d 922 (CA8 1995). ............................................. 6
*United States v. Cochrane*, 985 F.2d 1027 (CA9 1993). ........................................... 2
*United States v. Dalton*, 960 F.2d 121 (CA10 1992). ......................................... 9, 10
*United States v. Davenport*, 519 F.3d 940 (CA9 2008). .......................................... 6
*United States v. Dixon*, 921 F.2d 194 (CA8 1990). ................................................ 6
*United States v. Jones*, 976 F.2d 176 (CA4 1992). ................................................ 10
*United States v. Kuzma*, 967 F.3d 959 (CA9 2020). ............................................. 6, 8
*United States v. Mann*, 701 F.3d 274 (CA8 2012). ................................................ 6
*United States v. Overton*, 573 F.3d 679 (CA9 2009). ............................................. 6
*United States v. Reedy*, 304 F.3d 358 (CA5 2002). ................................................ 5
*United States v. Wahchumwah*, 710 F.3d 862 (CA9 2013). ...................................... 5
*United States v. Williams*, 8 F.Supp.3d 1219 (D. Haw. 2014). ................................. 2

### Constitutional Provisions

U.S. Const., art. I, §8, cl. 1 (taxing power). ..................................................... 8, 9, 10
U.S. Const., amend. V (double jeopardy). ......................................................... 5, 6

### Statutes

18 U.S.C. §922. ............................................................................... 3, 6, 7, 9, 10
18 U.S.C. §924. ......................................................................................... 3
26 U.S.C. §5822. ..................................................................................... 7, 9
26 U.S.C. §5841. ..................................................................................... 1, 3
26 U.S.C. §5845. .............................................................................. 1, 3, 4, 5, 6
26 U.S.C. §5861. ........................................................................ 1, 3, 4, 5, 6, 7, 11
26 U.S.C. §5871. ..................................................................................... 1, 3
Firearm Owners' Protection Act of 1986 (FOPA). ................................................ 9, 10
National Firearms Act of 1934 (NFA). ...................................................... 4, 7, 8, 9, 10

### Other Authority

27 C.F.R. §479.105. ..................................................................................... 9
*Bronsozian v. United States* (No. 19-6220) (brief) (March 2020). ........................... 11
U.S. Justice Manual §9-63.516, 1999 WL 33219894. ....................................... 7, 8, 9

Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing was served on the following by NEF when the foregoing was electronically filed in this Court on April 23, 2024:

    Sara D. Ayabe
    Rebecca A. Perlmutter
    Assistant United States Attorneys

    Date:  Honolulu, Hawaii, April 23, 2024.

                              */s/ Craig W. Jerome*
                              Craig W. Jerome
                              First Assistant Federal Defender
                              Attorney for Defendant
                              Christopher Chan