CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

SARA D. AYABE #9546
REBECCA PERLMUTTER
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  sara.ayabe@usdoj.gov
          rebecca.perlmutter@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 22-00109 DKW |
| | ) | |
| Plaintiff, | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT'S MOTION TO |
| vs. | ) | DISMISS UNDER THE SECOND |
| | ) | AMENDMENT OR THE |
| CHRISTOPHER CHAN, | ) | COMMERCE CLAUSE [ECF NO. |
| | ) | 146]; CERTIFICATE OF SERVICE |
| Defendant. | ) | |
| | ) | |
| | ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO
DISMISS UNDER THE SECOND AMENDMENT OR
THE COMMERCE CLAUSE [ECF NO. 146]

## TABLE OF CONTENTS

Page

I.     BACKGROUND ........................................................................................ 1

II.    LEGAL BACKGROUND ....................................................................... 2

       A.     Motions to Dismiss.................................................................... 2

       B.     The Second Amendment ........................................................... 3

III.   ARGUMENT ............................................................................................ 4

       A.     Chan's Second Amendment Arguments Are Without Merit .............. 4

              1.     Count 1 (Unregistered Short-Barreled Rifle) ........................... 5

                     a.     Chan's Second Amendment challenge to Count 1
                            fails at the outset because short-barreled rifles are
                            dangerous and unusual weapons that are not
                            typically possessed by law-abiding citizens for
                            lawful purposes and because the plain text of the
                            Second Amendment Does not protect Chan's alleged
                            conduct ............................................................................ 5

                     b.     The challenged restrictions would also satisfy
                            *Bruen's* second step because they fall within
                            well-established historical traditions ............................. 11

              2.     Count 2 (Machinegun) ............................................................ 14

                     a.     Ninth Circuit case law squarely forecloses Chan's
                            challenge to Count 1 ....................................................... 14

                     b.     Even if *Henry* were not controlling, possession of
                            machineguns is not protected under the plain text of
                            the Second Amendment.................................................... 18

                     c.     In any event, 922(o) is consistent with the Nation's

historical tradition of firearms regulation......................21

B.     Chan's Commerce Clause Challenge Fails.........................24

IV.  CONCLUSION   .........................................................................25

TABLE OF AUTHORITIES

Cases                                                                  Page(s)

*Andrews v. State*,
   50 Tenn. 165 (1871) ............................................................ 23

*Bevis v. City of Naperville*,
   85 F.4th 1175 (7th Cir. 2023) .........................................20, 21

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016) ...................................................... 9, 17

*Cox v. United States,* No. CR 11-00022RJB,
   2023 WL 4203261 (D. Alaska June 27, 2023) .......................... 15, 18

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ................................................ *passim*

*Duncan v. Bonta*,
   695 F. Supp. 3d 1206 (S.D. Cal. 2023) ............................... 22

*Duncan v. Bonta*,
   83 F.4th 803 (9th Cir. 2023) ........................................ 22

*Firearms Regul. Accountability Coal., Inc. v. Garland*,
   691 F. Supp. 3d 1043 (D.N.D. 2023) .................................. 8

*Friedman v. City of Highland Park, Illinois*,
   784 F.3d 406 (7th Cir. 2015) ........................................ 7

*Garland v. Cargill*,
   602 U.S. 406 (2024) ................................................ 17

*Hamling v. United States,*
   418 U.S. 87 (1974) .................................................. 2

*Herrera v. Raoul*,
   670 F.Supp.3d 665 (N.D. Ill. 2023) ................................ 12

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ................................................ 4

*Miller v. Bonta,* No. 19-CV-01537 BEN,
   2023 WL 6929336 (S.D. Cal. Oct. 19, 2023) ........................ 22

| Cases | Page(s) |
|---|---|

*Montana Shooting Sports Ass'n v. Holder*,
727 F.3d 975 (9th Cir. 2013) ........................................................ 25

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) ...................................................... *passim*

*Ocean State Tactical, LLC v. Rhode Island*,
95 F.4th 38 (1st Cir. 2024) ........................................ 20, 22

*Rupp v. Bonta, No.* 8:17-cv-00746-JLS-JDE,
2024 WL 1142061 (C.D. Cal. Mar. 15, 2024) ........................... 14, 21

*Teixeira v. Cnty. of Alameda*,
873 F.3d 670 (9th Cir. 2017) ........................................... 11

*United States v. Alaniz*,
69 F.4th 1124 (9th Cir. 2023) ...................................... 4, 9

*United States v. Berger*,
473 F.3d 1080 (9th Cir. 2007) ........................................... 3

*United States v. Boren*,
278 F.3d 911 (9th Cir. 2002) ............................................ 3

*United States v. Broadbent*, No. 2:19-CR-00155-DJC,
2023 WL 6796468 (E.D. Cal. Oct. 13, 2023) ................................ 15

*United States v. Cox*,
906 F.3d 1170 (10th Cir. 2018) .......................................... 9

*United States v. Danielson*, No. 22-299
(MJD/LIB), 2023 WL 5288049 (D. Minn. Aug. 17, 2023) ................. 6

*United States v. Duarte*,
101 F.4th 657 (9th Cir. 2024) .......................................... 16

*United States v. Gilbert*,
286 Fed. Appx. 383 (9th Cir. 2008) ..................................... 8

*United States v. Gonzales*, No. 2:10-CR-00967 CW,
2011 WL 5288727 (D. Utah Nov. 2, 2011) .................................. 13

| Cases | Page(s) |
|---|---|

*United States v. Henry*
688 F.3d 637 (9th Cir. 2012) ...................................................................... *passim*

*United States v. Hernandez*, No. CR 22-122-GBW,
2024 WL 964213 (D. Del. Mar. 5, 2024) ........................................................ 18

*United States v. Hicks*, No. CR 23-65,
2024 WL 1840326 (W.D. La. Apr. 26, 2024) ................................................. 18

*United States v. Holton*,
639 F.Supp.3d 704 (N.D. Tex. Nov. 3, 2022) ............................................ 11, 12

*United States v. Kittson*, No. 3:21-CR-00075-IM,
2023 WL 5015812 (D. Or. Aug. 7, 2023) ........................................................ 15

*United States v. Lane*,
689 F. Supp. 3d 232 (E.D. Va. 2023) ............................................................... 9

*United States v. Lyle*,
742 F.3d 434 (9th Cir. 2014) ............................................................................ 3

*United States v. Miller*,
307 U.S. 174 (1939) ................................................................................... 8, 11

*United States v. Miller*, No. 3:23-CR-41-S,
2023 WL 6300581 (N.D. Tex. Sept. 27, 2023) ......................................... *passim*

*United States v. Meekins*, No. 222CR00181APGEJY,
2023 WL 4748563 (N. Nev. May 9, 2023) ....................................................... 25

*United States v. Myers*, No. 3:22-CR-00067-ART-CSD-1
2024 WL 2924081 (D. Nev. June 10, 2024) ............................................... 4, 5, 9

*United States v. Perez-Garcia*,
96 F.4th 1166 (9th Cir. 2024) ........................................................................ 13

*United States v. Rahimi*,
144 S.Ct. 1889 (2024) .............................................................................. 13, 21

*United States v. Robertson*,
875 F.3d 1281 (9th Cir. 2017) ....................................................................... 16

Cases                                                                  Page(s)

*United States v. Rodriguez-Gonzalez,*
    358 F.3d 1156 (9th Cir. 2004) ................................................................. 3

*United States v. Royce,*
    2023 WL 2163677 (D.N.D. Feb 22, 2023) ....................................... 6

*United States v. Rush*, No. 22-CR-40008-JPG,
    2023 WL 403774 (S.D. Ill. Jan. 25, 2023) ....................................... 6

*United States v. Saleem,*
    659 F. Supp. 3d 683 (W.D.N.C. 2023) ............................................ 10

*United States v. Saleem*, No. 3:21-cr-86
    2023 WL 2334417 (W.D.N.C. Mar. 2, 2023) ................................... 6

*United States v. Simien,*
    655 F.Supp.3d 540 (W.D. Tex. 2023) .............................................. 12

*United States v. Stepp-Zafft,*
    733 F. App'x 327 (8th Cir. 2018) ...................................................... 8

*United States v. Stewart,*
    451 F.3d 1071 (9th Cir. 2006) ..................................................... 24, 25

*United States v. Thompson/Center Arms Co.,*
    504 U.S. 505 (1992) ........................................................................... 13

*United States v. Tita,*
    2022 WL 17850250 (D. Md. Dec. 22, 2022) ................................... 12

*United States v. Vongxay,*
    594 F.3d 1111 (9th Cir. 2010) .......................................................... 16

*United States v. Wilson*, No. 4:24-CR-027-P-1
    2024 WL 1144251 (N.D. Tex. Mar. 15, 2024) ................................. 17

Statutes and Rules

18 U.S.C. § 922(o) ......................................................................... *passim*
18 U.S.C. § 924 ..................................................................................... 2
26 U.S.C. § 5801 ................................................................................... 4

iv

26 U.S.C. § 5841 ................................................................................................. 2

26 U.S.C. § 5845 ....................................................................................... 5, 9, 17

26 U.S.C. § 5861 ............................................................................................ 2, 5

26 U.S.C. § 5872 ................................................................................................. 4

Fed. R. Crim. P. 7 ............................................................................................... 2

Fed. R. Crim. P. 12 ............................................................................................. 2

U.S. Const., art. I, § 8, cl. 3 ............................................................................. 24

The United States of America, by and through undersigned counsel, opposes Defendant Christopher Chan's Motion to Dismiss Under the Second Amendment or the Commerce Clause, ECF No. 146 (the "Motion"). Neither the Second Amendment nor the Commerce Clause warrant dismissal of Count 1 or Count 2.

## I.     BACKGROUND

The background of this case has been set forth in prior orders of this Court. As the Court recounted in its order denying Chan's motion to suppress evidence:

> On August 16, 2022, after receiving citizen reports that Defendant Christopher Chan had engaged in "suspicious" and "unusual" behavior and was in possession of a large number of firearms, including "assault-style weapons," Honolulu Police Department ("HPD") officers prepared to conduct a "welfare check" at Chan's place of residence, the Wailana at Waikiki condominium complex ("Wailana"), on Ala Moana Boulevard. Before HPD could perform the check, they encountered Chan driving his vehicle out of the Wailana parking garage. An HPD officer approached on foot, directed Chan to stop and exit his vehicle, and unsuccessfully attempted to open the driver's side door when Chan did not comply. In response, Chan accelerated, colliding with an HPD vehicle as he sped away.
>
> Over the next several minutes, in the course of fleeing to a nearby condominium complex that was home to his mother, Chan struck numerous vehicles and threatened the safety of many pedestrians in the Ala Moana corridor. HPD officers finally cornered and apprehended him while in his vehicle in the garage of his mother's residence. Upon receiving information that Chan was in possession of a black tactical rifle bag—in apparent violation of Hawaiʻi's "Place to Keep" statute—officers searched his vehicle without a warrant and discovered the rifle bag in the trunk. Inside the bag, officers found a short-barrel rifle complete with 30 rounds loaded in a magazine. On November 17, 2022, Chan was indicted by a federal grand jury for possession of an unregistered firearm. Dkt. Nos. 34, 47.

ECF No. 64 at 1-2.

Subsequently, Chan was charged as follows:

> On November 17, 2022, [Chan] was indicted on a single count of possession of an unregistered firearm, "namely, a rifle containing no serial number or appropriate manufacturer markings, with a barrel length measuring approximately 10.5 inches" in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Dkt. No. 34 at 2. A Superseding Indictment, filed on December 22, 2022, slightly modified this charge. See Dkt. No. 47 at 2. On May 25, 2023, however, the Grand Jury returned a Second Superseding Indictment which added an additional count—possession of a machinegun in violation of 18 U.S.C. § 922(o) and 18 U.S.C. § 924(a)(2).

ECF No. 138 at 2 (footnote omitted).

## II.   LEGAL STANDARD

### A.   Motions to Dismiss

As this Court explained in its prior order denying Chan's motion to dismiss Count 1 of the Second Superseding Indictment, the governing legal standard is as follows:

> Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a party may raise by pretrial motion "a defect in the indictment or information, including . . . failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). To state an offense, the indictment needs to provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). As such, the "indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

2

In considering such a motion, the Court is "bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014) (quoting *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002)). Although "the indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied," *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (quotation marks and citation omitted), "each count in an indictment . . . is regarded as if it were a separate indictment and must be sufficient in itself." *United States v. Rodriguez-Gonzalez*, 358 F.3d 1156, 1159 (9th Cir. 2004) (quotation marks and citations omitted).

ECF No. 138 at 4-5.

## B.    The Second Amendment

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022),  the Supreme Court articulated a two-step inquiry for determining whether firearms regulations are constitutional. *Id.* at 24. As recently set forth by the Ninth Circuit:

> *Bruen* step one involves a threshold inquiry. In alignment with *Heller*, it requires a textual analysis, determining whether the challenger is "part of 'the people' whom the Second Amendment protects," whether the weapon at issue is "'in common use' today for self-defense," and whether the "proposed course of conduct" falls within the Second Amendment. *Id.* at 2134-35 (citing *Heller*, 554 U.S. at 580, 627, 128 S.Ct. 2783).
> If the first step is satisfied, we proceed to *Bruen* step two, at which the "government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. Thus, to carry its burden, the government must produce representative analogues to demonstrate that the challenged law is consistent with a historical tradition of regulation. *Id.* at 2127, 2131-33.

3

> Notably, the analogue required at step two need not be a
> "historical twin." *Id*. at 2133. Rather, we use history to "guide our
> consideration of modern regulations that were unimaginable at the
> founding." *See id*. at 2132. *Bruen*, therefore, instructs that the
> analogue must be "relevantly similar" as judged by "at least two
> metrics: how and why the regulations burden a law-abiding citizen's
> right to armed self-defense." *Id*. at 2132-33 (citing *Heller*, 554 U.S. at
> 599, 128 S.Ct. 2783; *McDonald*, 561 U.S. at 767, 130 S.Ct. 3020). In
> other words, in analyzing a burden on the possession of firearms, we
> look to "whether modern and historical regulations impose a
> comparable burden on the right of armed self-defense and whether
> that burden is comparably justified." *Id*. at 2133.

*United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023). Moreover, *Heller*

establishes "that certain weapons are simply not protected by the Second

Amendment." *United States v. Myers*, No. 3:22-CR-00067-ART-CSD-1, 2024 WL

2924081, at *2 (D. Nev. June 10, 2024).

## III.   ARGUMENT

Chan's motion seeks dismissal of Counts 1 and 2 of the Second Superseding

Indictment on Second Amendment grounds. Chan also asserts that Count 2 violates

the Commerce Clause. These arguments are unavailing.

### A.   Chan's Second Amendment Arguments Are Without Merit.

Chan's Second Amendment challenge to Count 1 (unlawful possession of an

unregistered short-barreled rifle) and Count 2 (unlawful possession of a

machinegun) fails as a matter law. The National Firearms Act, 26 U.S.C. §§ 5801-

5872 ("NFA") and 18 U.S.C. § 922(o) are not an infringement on an individual

United States citizen's Second Amendment right to keep and bear arms, and none

4

of the statutory provisions underlying either Count 1 or Count 2 offend the Second

Amendment.[1]

### 1.     Count 1 (Unregistered Short-Barreled Rifle)

#### a.     Chan's Second Amendment challenge to Count 1 fails at the outset because short-barreled rifles are dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes and because the plain text of the Second Amendment does not protect Chan's alleged conduct.

First, Chan's argument fails at the first step of the *Bruen* inquiry.  As

"[n]umerous lower courts have held, post-*Bruen*," "unregistered short-barreled

rifles are not protected by the Second Amendment because they are 'dangerous and

unusual weapons' which are 'not typically possessed by law-abiding citizens for

lawful purposes.'" *Myers*, 2024 WL 2924081 at *3 (citing *Heller* and citing

numerous post-*Heller* and post-*Bruen* cases).[2] Indeed, as the district court in *Myers*

---

[1] *See generally Myers*, 2024 WL 2924081, at *1:

> The relevant portion of the NFA provides, "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." [26] U.S.C. § 5861(d). The NFA defines "firearm" to include "a rifle having a barrel or barrels of less than 16 inches in length," 26 U.S.C. § 5845(a). Guns of this length are commonly referred to as short-barreled rifles. Registering a firearm requires the payment of a $200 tax; identification of the firearm to be registered; and identification of the applicant, including through copies of their fingerprints and a photograph. 26 U.S.C. §§ 5811–12, 5821–22.

[2] *See also id.* at *3:

> *United States v. Miller*, No. 3:23-CR-41-S, 2023 WL 6300581, at *4 (N.D. Tex. Sept. 27, 2023) (holding that short-barreled rifles are dangerous and

recognized, "[t]he Court is not aware of *any* case in which a court has found that the Second Amendment protects the right of an individual to possess an unregistered short-barreled rifle." *Id.* at *3 (emphasis added). The Government here is similarly not aware of any such authority. In short, "consistent with *Heller* and *Bruen*, . . . an unregistered short-barreled rifle is not the type of weapon protected by the Second Amendment." *Id.* at *4.

Chan claims that restrictions on short-barreled rifles do not offend the Second Amendment. He argues that "short-barreled rifles are arms" and "[m]achineguns are arms," and that "[t]herefore, they are protected by the Second Amendment." ECF No. 146 at 7. Chan asserts that simply because "532,725 short-barreled rifles were registered and lawfully possessed in the United States" (ECF No. 146 at 6), short-barreled rifles must necessarily be protected. This argument is also unavailing. Chan cites the survey from the *Bureau of Alcohol, Tobacco,*

---

unusual weapons not subject to Second Amendment protections); *United States v. Danielson*, No. 22-299 (MJD/LIB), 2023 WL 5288049, at *4-5 (D. Minn. Aug. 17, 2023) (upholding the constitutionality of § 5861(d) regarding short-barreled rifles); *United States v. Saleem*, No. 3:21-cr-86 (FDW/DSC), 2023 WL 2334417, at *1 (W.D.N.C. Mar. 2, 2023) (rejecting a Second Amendment challenge as to short-barrel rifles); *United States v. Royce*, 2023 WL 2163677 at *3 (D.N.D. Feb 22, 2023) (holding that short-barreled rifles and shotguns are dangerous and unusual weapons not protected by the Second Amendment); *United States v. Rush*, No. 22-CR-40008-JPG, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023) ("*Bruen* had no impact on the constitutionality of regulating the receipt or possession [of] an unregistered short-barreled rifle.").

*Firearms and Explosives: Commerce in the United States: Annual Statistical Update* at 16 (2021). *See id*. That publication, as Chan notes, indicates that in 2021 there were 532,725 registered short-barreled rifles in the United States and 741,146 machineguns. There were, however, according to an often-cited study, an estimated *393,347,000* civilian held firearms in the United States as of 2018. *See* https://www.smallarmssurvey.org/sites/default/files/resources/SAS-BP-Civilian-held-firearms-annexe.pdf (last visited Aug. 5, 2024). Even assuming that number has not increased in the last 6 years, registered short-barreled rifles account for only .13% of all firearms in the United States. Accordingly, short-barreled rifles are not in "common use" for anything, let alone in "common use for self-defense."

Chan's unduly narrow focus on the number of short-barreled firearms in existence is inconsistent with Second Amendment case law. As the Seventh Circuit has observed, "[d]uring Prohibition the Thompson submachine gun (the 'Tommy gun') was all too common in Chicago, but that popularity didn't give it a constitutional immunity from the federal prohibition enacted in 1934." *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 408 (7th Cir. 2015). Likewise, Chan's argument relies on an unduly broad interpretation of the word "arms," divorced from context. This reading, for example, "'run[s] smack into *Heller*'s finding that short-barreled shotguns are not' commonly used for self-defense." *United States v. Miller*, No. 3:23-CR-0041-S, 2023 WL 6300581, at *2 (N.D. Tex.

7

Sept. 27, 2023) (quotation and alteration omitted).  "*Heller* said that there is no Second Amendment right to possess a short-barreled shotgun, and a plurality of the [Supreme] Court previously observed in a different context that a short-barreled rifle is a 'concealable weapon' that is 'likely to be used for criminal purposes.'" *United States v. Stepp-Zafft*, 733 F. App'x 327, 329 (8th Cir. 2018) (unpublished) (citations omitted). There is "no constitutional distinction between short-barreled shotguns and rifles in the wake of *Heller*." *Id.*; *see, e.g.*, *United States v. Gilbert*, 286 Fed. Appx. 383, 386 (9th Cir. 2008) (unpublished) ("Under *Heller*, individuals still do not have the right to possess . . . short-barreled rifles . . . **.**").

The Supreme Court has stated that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 625.[3] This principle applies with equal force to short-barreled rifles.[4] Like a short-barreled shotgun, a short-

---

[3] In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court considered a Second Amendment challenge to the NFA brought by defendants indicted for transporting an unregistered short-barreled shotgun.  Rejecting the challenge, the Court held that, absent "any evidence tending to show that possession or use of a [short-barreled shotgun] at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." *Id.* at 178. In *Heller*, the Supreme Court reaffirmed *Miller*'s limitation of the types of weapons covered by the Second Amendment.

[4] *See Firearms Regul. Accountability Coal., Inc. v. Garland*, 691 F. Supp. 3d 1043, 1053 (D.N.D. 2023) ("Federal courts have extended this same analysis to short-

barreled rifle is "a long gun with a shortened barrel" which is "both dangerous, because its concealability fosters its use in illicit activity, and unusual, because of its heightened capability to cause damage." *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018). Congress imposed identical registration requirements on short-barreled rifles and shotguns. 26 U.S.C. § 5845(a).

To satisfy *Bruen*'s threshold inquiry, Chan must demonstrate that short-barreled rifles are "in common use today for self-defense," and show that his particular "proposed course of conduct falls within the Second Amendment." *Alaniz*, 69 F.4th at 1128 (citing *Bruen* and *Heller*). Chan has not made, and cannot make, those showings.[5] As explained above, "short-barreled rifles are not in common use for self-defense today." *Miller*, 2023 WL 6300581 at *3.

---

barreled rifles."); *Myers*, 2024 WL 2924081, at *3 ("*Heller*'s statement that the Second Amendment does not apply to short-barreled shotguns applies with equal force to short-barreled rifles.").

[5] Chan's reliance (ECF No. 146 at 6) on Justice Alito's concurrence in *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam), is misplaced. That concurrence was joined only by Justice Thomas, and "concurring opinions are not holdings of the Supreme Court[.]" *United States v. Lane*, 689 F. Supp. 3d 232, 251 (E.D. Va. 2023). In *Caetano*, "the majority did not vacate the decision below because of any numerical disagreement." *Id.* "Rather, it did so because the Massachusetts Supreme Court applied a standard inconsistent with *Heller* when it erroneously equated 'unusual' with 'in common use at the time of the Second Amendment's enactment.'" *Id.* (quotations and alternation omitted).

Additionally, "the plain text of the Second Amendment does not protect [Chan]'s alleged conduct—possession of an *unregistered* short-barreled rifle." *United States v. Miller*, No. 3:23-CR-0041-S, 2023 WL 6300581, at *3 (N.D. Tex. Sept. 27, 2023) (emphasis added).[6] The NFA's registration requirement for short-barreled rifles does not amount to an "infringe[ment]" of the Second Amendment (and is not inconsistent with *Bruen*) because the registration and taxation requirements are more akin to the types of licensing regimes that the Court has indicated are not unconstitutional even as to handguns.[7] The relevant provision of the NFA does not ban short-barreled rifles outright; it merely requires registration and taxation. Just as "shall issue" public-carry licensing does not offend the Second Amendment under *Bruen*,[8] so too is the NFA not inconsistent with *Bruen*. *See, e.g.*, *United States v. Saleem*, 659 F. Supp. 3d 683, 699 (W.D.N.C. 2023) ("the NFA's registration and taxation requirements are of the type that the Supreme Court in *Bruen* determined were permissible").

---

[6] "The Court could end its analysis here, as it need not proceed to the second step when the Second Amendment's plain text does not cover an individual's conduct." *Id.*

[7] Chan observes that "[i]n today's dollars, the $200 tax on NFA firearms seems almost nominal." ECF No. 146 at14.

[8] *Bruen*, 597 U.S. at 39 n.9; *id.* at 79 (Kavanaugh, J., concurring) (recognizing that *Bruen* "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense" and "does not affect the existing licensing regimes— known as 'shall-issue' regimes—that are employed in 43 States").

10

      **b.**    **The challenged restrictions would also satisfy *Bruen*'s second step because they fall within well-established historical traditions.**

Even if the Court were to reach the second step of the *Bruen* analysis, the NFA's restrictions on short-barreled rifles survive constitutional scrutiny because they fall within well-established historical traditions of (1) firearms registration and (2) regulating dangerous and unusual weapons. As the Ninth Circuit has recognized, "colonial governments substantially controlled the firearms trade." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017) (en banc). And in *Miller*, the Supreme Court engaged in historical analysis demonstrating the Nation's history of regulating the permissible length of firearms in the context of the militia. *Miller*, 307 U.S. at 180 (citing a 1649 militia law as well as a Revolutionary Era law that regulated the length of firearms for militia members).

The Nation's long tradition of firearms registration includes the following historical analogues recounted and analyzed in a recent district court decision:

> Pre-colonial evidence suggests that colonies required gun registration in a variety of ways. For instance, in 1631, Virginia implemented a "muster" requirement, necessitating inhabitants to annually account for their "arms and ammunition" to the "commanders" under which they served. [Dkt. No. 52-15 at 69]. As other district courts have similarly noted, American colonies in the 17th century had firearm owners register their guns through mandatory "muster" laws, taxes requiring identification of firearms, and as part of broader legislative programs regarding the sale, transfer, and taxation of firearms. *See United States v. Holton*, 639 F.Supp.3d 704, 711-12 (N.D. Tex. Nov. 3, 2022) (noting that multiple colonial governments required *678 registration of arms through mandatory "muster" laws and taxes imposed from "as early as 1607 and well into the 1800s"); s*ee also United States v.*

11

*Tita*, 2022 WL 17850250, at *7 (D. Md. Dec. 22, 2022) (noting that "many of the colonies enacted laws regarding the registration of firearms as part of legislative schemes regarding the sale, transfer, and taxation of firearms," citing laws from 17th century New York, Virginia, and Connecticut). Indeed, the Holton Court relied on many of the same registration and taxation statutes as cited in this case to hold that 18 U.S.C. § 922(k), the statute prohibiting receipt of a firearm with the manufacturer's serial number obliterated or removed, "pass[ed] constitutional muster under *Bruen*." *Compare Holton*, 639 F.Supp.3d at 710-12 (cleaned up) with [Dkt. No. 52 at 40 n.24; Dkt. No. 52-15 at 69-71].

During the era of the Fourteenth Amendment's ratification, many state legislatures taxed firearms, which in essence required that firearms be identified and disclosed to the government. Mississippi required a "tax of two dollars on each dueling or pocket pistol" in 1848. [Dkt. No. 52-15 at 69]. In 1856, North Carolina similarly required that "every pistol, except such as are used exclusively for mustering" that was "used, worn or carried" be taxed. [*Id.*] This law was reenacted in a similar form the next congressional session. [*Id.*] . . . .

*Herrera v. Raoul*, 670 F.Supp.3d 665, 677-78 (N.D. Ill. 2023). As discussed *supra*, the relevant provision of the NFA does not ban short-barreled rifles outright; it merely requires registration and taxation.

Additionally, the challenged provisions fall within the well-established tradition of regulating dangerous and unusual weapons. *Heller* recognized a "historical tradition of prohibiting the carrying of dangerous and unusual weapons." 554 U.S. at 627. "This longstanding tradition grew from English common law, under which 'the offense of riding or going armed, with dangerous or unusual weapons, [was] a crime.'" *United States v. Simien*, 655 F.Supp.3d 540, 553 (W.D. Tex. 2023) (quoting 4 W. Blackstone, Commentaries on the Laws of England 148–49 (1769)). Reflecting "the principles that underpin our regulatory

12

tradition," *United States v. Rahimi*, 144 S.Ct. 1889, 1898 (2024), courts have thus recognized that "legislatures may ban 'dangerous and unusual weapons' because the Second Amendment does not guarantee an unlimited right to possess every kind of weapon," *United States v. Perez-Garcia*, 96 F.4th 1166, 1177 (9th Cir. 2024) (citation omitted); *id.* at 1186 (recognizing that "legislatures may prohibit 'dangerous and unusual weapons'").

The dangerous characteristics of short-barreled rifles have long been recognized. In 1968, "Congress specifically found that 'short-barreled rifles are primarily weapons of war and have no appropriate sporting use or use for personal protection." *United States v. Gonzales*, No. 2:10-CR-00967 CW, 2011 WL 5288727, at *5 (D. Utah Nov. 2, 2011) (quoting S. Rep. No. 90-1501, at 28 (1968)); *see also United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992) (recognizing that the NFA's "object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used"). Short-barreled rifles, like short-barreled shotguns, may be regulated because they are dangerous and unusual, concealable weapons.[9]

---

[9] Such weapons are also unusual, for the same reasons that they are not "in common use," as explained *supra*.

### 2.    Count 2 (Machinegun)

Chan also asserts that Count 2 must be dismissed under the Second

Amendment. Again, Chan's arguments are unavailing.

### a.    Ninth Circuit case law squarely forecloses Chan's challenge to Count 1.

To start, Chan's arguments are foreclosed by Ninth Circuit case law.  In

*United States v. Henry*, the Ninth Circuit recognized that "machine guns are

'dangerous and unusual weapons' that are not protected by the Second

Amendment."  *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012).  The

court thus rejected a Second Amendment challenge to 922(o)(1).[10]

*Henry* remains good law.  The Ninth Circuit found that machineguns were

"dangerous and unusual weapons" and thus not protected under the Second

Amendment. Because the plain text of the Second Amendment does not protect

machineguns, *Henry* did not need to reach the second prong of the pre-*Bruen* test,

which involved interest balancing. *Heller* recognized that "dangerous and unusual

weapons" are not protected by the Second Amendment, and *Bruen* reiterated this

holding. *Bruen*, 597 U.S. at 21 (2022) (*Heller*, 554 U.S. at 627). The grounds on

---

[10] *See also Rupp v. Bonta*, No. 8:17-cv-00746-JLS-JDE, 2024 WL 1142061, at *10 (C.D. Cal. Mar. 15, 2024) ("[T]he Ninth Circuit has held that fully automatic machine guns are dangerous and unusual—noting that their rapid-fire ability increases the risk of mass-casualty events by allowing a shooter to kill dozens of people within a matter of seconds." (quotation omitted; citing *Henry*)).

which *Henry* rejected a Second Amendment challenge to 922(o)(1)—that

machineguns are dangerous and unusual weapons that are not covered under the

plain text of the Second Amendment—are entirely consistent with *Bruen.* The

relevant holding that machineguns are dangerous and unusual weapons outside of

protection of the Second Amendment has not been abrogated and remains

precedential. The relevant aspects of the Ninth Circuit's holding in *Henry* are not

irreconcilable with intervening Supreme Court decisions.

Following *Bruen*, numerous district courts within the Ninth Circuit have

properly recognized the precedential authority of *Henry*'s holding that

machineguns are "dangerous and unusual" weapons outside of the protection of the

Second Amendment.[11] Chan disagrees. He wrongly asserts that *Henry* should be

viewed as overruled by *Bruen*. In support of this contention, Chan relies upon the

---

[11] *See, e.g.*, *United States v. Broadbent*, No. 2:19-CR-00155-DJC, 2023 WL
6796468, at *4 (E.D. Cal. Oct. 13, 2023) ("Whatever changes *N.Y. State Rifle v.
Bruen* brought to the Second Amendment landscape, inclusion of dangerous and
unusual weapons [such as machineguns] in the Second Amendment right isn't one
such change"); *United States v. Kittson*, No. 3:21-CR-00075-IM, 2023 WL
5015812, at *2 (D. Or. Aug. 7, 2023) ("[I]n concluding that machineguns are
highly dangerous and unusual weapons that are not typically possessed by law-
abiding citizens for lawful purposes, *Henry* employed the same standard
established by *Heller* and confirmed in *Bruen*." (quotation omitted)); *Cox v. United
States*, No. CR 11-00022RJB, 2023 WL 4203261, at *7 (D. Alaska June 27, 2023)
("Machine guns are not protected 'arms' under the Second Amendment because
they are both 'dangerous and unusual' . . . ."). Thus, "[b]ecause *Heller* was
undisturbed by *Bruen*, and *Henry* reached its holding by relying on *Heller*, *Henry*
is binding precedent on this Court." *Kittson*, 2023 WL 5015812, at *2.

now-vacated three-judge panel opinion in *United States v. Duarte*, 101 F.4th 657, 661 (9th Cir. 2024), *reh'g en banc granted, opinion vacated*, No. 22-50048, 2024 WL 3443151 (9th Cir. July 17, 2024).[12] And Chan asserts—incorrectly and without support—that "[i]n *Henry*, the Ninth Circuit applied the old interest-balancing approach that the Supreme Court has since firmly rejected, and thus, *Henry* is no longer binding on this Court." ECF 142-2 at 8. This is not correct. As explained above, *Henry* did not conduct an interest-balancing analysis, and the relevant aspects of its holding remain good law. Particularly in light of the Ninth Circuit's "high standard" for determining whether intervening decisions abrogate existing Ninth Circuit precedents, it is clear that *Henry* remains binding.[13]

---

[12] Even if *Duarte* had not been vacated, its reasoning is unpersuasive for the reasons the Government presented in its petition for rehearing en banc. *See* Petition for Rehearing En Banc, *United States v. Duarte*, No. 22-50048, ECF No. 72-1. Moreover, *Duarte* is inapposite. It involved a Second Amendment challenge to the ban on felons possessing firearms, not the ban on possessing machineguns. The opinion only abrogated *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010)—it did not, and could not, sweep away all pre-*Bruen* Second Amendment decisions in the Ninth Circuit.

[13] "The clearly irreconcilable requirement is a high standard.  So long as the court can apply our prior circuit precedent without running afoul of the intervening authority it must do so. It is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017) (citations and internal quotation marks omitted), *cert. granted, judgment vacated on other grounds*, 139 S. Ct. 1543 (2019).

Chan asserts that because there are several hundred thousand machineguns in existence, they are not "unusual" under the Supreme Court's jurisprudence.[14] But Chan's justification for relying on a simple accounting of how many machineguns exist comes from Justice Alito's nonbinding concurrence to the Supreme Court's *Caetano* per curiam decision. The number of machineguns in existence is not the dispositive or even a predominant consideration in determining whether a particular weapon is "dangerous and unusual" under Second Amendment case law.[15] For example, the mere fact that a certain number of a particular type of weapon exists in the abstract says nothing about whether that weapon is commonly possessed for self defense. *See, e.g.*, *United States v. Wilson*, No. 4:24-CR-027-P-1, 2024 WL 1144251, at *3 (N.D. Tex. Mar. 15, 2024) ("While correct that the number of civilian-owned machineguns has increased to about 740,000 as of May 2021, as cited by Wilson, this amount remains too insignificant for machineguns to be considered in common use, especially when

---

[14] Chan also cites the estimated number of bump stock devices in the U.S. for his argument that there are many machineguns in existence. ECF No. 146 at 7. Even beyond the rationale that the number of a type of weapon in existence is not an appropriate consideration for the dangerousness and unusualness of a weapon, this is clearly irrelevant. Chan acknowledges that the Supreme Court has plainly held in *Garland v. Cargill*, 602 U.S. 406 (2024), that "these devices did not, in fact, fit within 26 U.S.C. § 5845(b)'s definition of a 'machinegun.'" ECF No. 146 at 7.

[15] As explained *supra* n.4, the Alito/Thomas concurrence in *Caetano* is nonbinding, and sweeps far more broadly than the narrow per curiam majority does.

factoring in the total increase in firearm usage nationwide."); *see also Henry*, 688 F.3d at 640 (observing that "[a] machine gun is 'unusual' because private possession of all new machine guns, as well as all existing machine guns that were not lawfully possessed before the enactment of § 922(o), has been unlawful since 1986").

> **b.    Even if *Henry* were not controlling, possession of machineguns is not protected under the plain text of the Second Amendment.**

To the government's knowledge, no court has ever held that machineguns are weapons that are protected under the plain text of the Second Amendment, and this unbroken string of decisions is undisturbed by *Bruen*. After *Bruen*, courts across the country have continued to affirm that machineguns are dangerous and unusual weapons outside the coverage of the Second Amendment.[16] Like previous Second Amendment challenges to Section 922(o)'s machinegun prohibition, Chan's challenge fails at this first hurdle and should be rejected.

*Bruen* makes clear that the Second Amendment does not protect machineguns as defined by the NFA.  *Bruen* reiterated the Supreme Court's observation in *Heller* that there was a "historical tradition of prohibiting the

---

[16] *See, e.g.*, *Cox v. United States*, No. CR 11-00022RJB, 2023 WL 4203261 (D. Alaska June 27, 2023); *United States v. Hicks*, No. CR 23-65, 2024 WL 1840326 (W.D. La. Apr. 26, 2024); *United States v. Hernandez*, No. CR 22-122-GBW, 2024 WL 964213, at *1 (D. Del. Mar. 5, 2024).

carrying of 'dangerous and unusual weapons'" and that the Second Amendment protects only "weapons that are in common use at the time." *Bruen*, 597 U.S. at 21 (citing *Heller*). It would be "startling," the Court said in *Heller*, if its prior precedent was read to mean that the NFA's "restrictions on machineguns . . . might be unconstitutional." 554 U.S. at 624. Interpreting the Second Amendment to exclude dangerous and unusual "weapons that are most useful in [modern] military service" was consistent with the amendment's prefatory clause because "the conception of the militia at the time of . . . ratification was the body of all citizens capable of military service" who would bring with them "the sorts of lawful weapons that they possessed at home." *Id.* at 627. Modern developments understandably "limit[] the degree of fit between the prefatory clause and the protected right," the Court noted. *Id.* at 627-28. *Bruen* affirmed that colonial legislatures reasonably and appropriately prohibited "dangerous and unusual" weapons—"a fact we already acknowledged in *Heller*," the Court said. *Bruen*, 597 U.S. at 47. The laws at issue in *Bruen* raised concerns because handguns—unlike machineguns—are "indisputably in 'common use' for self-defense today" and therefore do not count as "dangerous and unusual" weapons, the likes of which have been historically and traditionally regulated or restricted. *Id.*

Numerous well-reasoned decisions suggest that restrictions on machineguns are not inconsistent with *Heller*/*Bruen*. The First Circuit held that a ban on large-

19

capacity magazines likely remained constitutional after *Bruen*, because such regulation was consistent with the nation's historical tradition of restricting dangerous and unusual weapons—such as, the court noted, machineguns. *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 45-46 & 50-51 (1st Cir. 2024). The Seventh Circuit held that a more expansive ban on large-capacity magazines and certain semiautomatic weapons themselves was likely constitutional after *Bruen*, likewise rejecting preliminary injunctive relief, in part because semiautomatic weapons are "much more like machineguns and military-grade weaponry than they are like the many different types of firearms that are used for individual self-defense." *Bevis v. City of Naperville*, 85 F.4th 1175, 1195 (7th Cir. 2023) (citing *Bruen*). The court repeated its observation from an earlier case, that *Heller* had "deemed a ban on private possession of machineguns to be obviously valid," which the court found "consistent with the methodology approved in *Bruen*." *Id.* at 1190-91 (emphasis added).

*Heller* says that dangerous and unusual weapons, including machineguns, do not implicate the Second Amendment. *Bruen* generally affirms and reiterates *Heller*. Chan cites no case deeming machinegun restrictions unconstitutional, either before or after *Bruen*. The few recent decisions to have touched on the issue make clear that *Bruen* casts no doubt on machinegun restrictions.

### c.    In any event, 922(o) is consistent with the Nation's historical tradition of firearms regulation.

As explained above, Section 922(o) does not violate the Second Amendment because machineguns are outside the scope of the "arms" protected under the Second Amendment.  But even if this Court were to conclude that the Second Amendment's plain text covers the possession of machineguns, the challenged provisions still do not violate the Second Amendment because restricting the possession of machineguns "is consistent with the Nation's historical tradition of firearm regulation." *Rahimi*, 144 S. Ct. at 1896 (citing *Bruen*, 597 U.S. at 24).

To determine whether the challenged provisions are part of this tradition, *Bruen* suggests that courts may consider (1) how and (2) "why [a regulation burdens] a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29.  Federal law's prohibition on the possession of machineguns is within a long-standing tradition of prohibiting possession especially dangerous weapons for civilian use to prevent their use in unlawful uses, as opposed to lawful self-defense.

The analysis in *Rupp v. Bonta* is instructive.  *See Rupp*, No. 817CV00746JLSJDE, 2024 WL 1142061, at *22 (C.D. Cal. Mar. 15, 2024).[17]  In

---

[17] The First and Seventh Circuits also describe and affirm this Nation's historical tradition of prohibiting the possession of dangerous and unusual weapons in the opinions upholding large-capacity magazine bans. *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 47 (1st Cir. 2024); *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1201 (7th Cir. 2023).

*Rupp*, the district court rejected a Second Amendment challenge to California's

Assault Weapons Control Act. Although machineguns differ from assault weapons

in certain respects, *Rupp* thorough consideration of historical analogues for bans on

dangerous and unusual weapons makes clear that the instant challenged provisions

are not unconstitutional.[18]

    *Rupp* identified several medieval and early English history laws banning

"dangerous and unusual weapons because of those weapons' association with

offensive use, as opposed to lawful self-defense." *Rupp*, 2024 WL 1142061, at

*20. The court also noted New Jersey's 1771 ban on trap or spring-loaded guns

which was passed to "[prevent] the unlawful use of what the New Jersey

legislature had determined to be a 'most dangerous' kind of weapon." *Id.* at *23.

Additionally, the court counted over twenty laws passed by states "during the late-

eighteenth and early-nineteenth century banning the possession, sale, and/or

---

[18] *Rupp* thoroughly explains why *Miller v. Bonta*, which conducted a similar analysis but came to different conclusions, is inapplicable and unpersuasive. *Miller v. Bonta*, No. 19-CV-01537 BEN (JLB), 2023 WL 6929336, at *10 (S.D. Cal. Oct. 19, 2023), *appeal held in abeyance*, No. 23-2979, 2024 WL 1929016 (9th Cir. Jan. 26, 2024). Chan also relies on another decision from the Southern District of California—*Duncan v. Bonta*, 695 F. Supp. 3d 1206, 1213 (S.D. Cal. 2023)—to argue that there is no historical analogue to a ban on the possession of machineguns. *Duncan* is inapposite; it involves a challenge to a restriction on large-capacity magazines, not machineguns. And, in any event, an en banc panel of the Ninth Circuit has stayed that decision, recognizing that the government "is likely to succeed on the merits" of its appeal. *Duncan v. Bonta*, 83 F.4th 803, 805 (9th Cir. 2023) (en banc).

manufacture of dangerous and unusual weapons, including pocket pistols, slungshots, and metallic knuckles." *Id.* at *29.

*Rupp* found further evidence of a historical tradition of banning dangerous and unusual weapons in the time leading up to and immediately following the passage of the Fourteenth Amendment.  The court identified three Antebellum era sale and manufacture prohibitions on certain dangerous and unusual weapons, which the state of Georgia noted was "to guard and protect the citizens of this State against the unwarrantable and too prevalent use of deadly weapons." *Id*. at *24. Additionally, the court considered several laws and judicial decisions from the Reconstruction Era which banned possession of certain weapons, including *Andrews v. State*, 50 Tenn. 165 (1871), which recognized that "[t]he Legislature ... ha[s] a right to prohibit the . . . keeping [of] weapons dangerous to the peace and safety of the citizens, and which are not usual in civilized warfare, or would not contribute to the common defense." *Rupp*, 2024 WL 1142061, at *25.

Even if conduct involving dangerous and unusual weapons such as machineguns were presumptively covered by the Second Amendment, the challenged provisions join this country's long and consistent historical tradition of regulating dangerous and unusual weapons, and thus, do not violate the Second Amendment.

23

**B.     Chan's Commerce Clause Challenge Fails.**

Finally, Chan argues that the Commerce Clause, U.S. Const., art. I, §8, cl. 3, requires dismissal of Count 2.  Again, Chan's argument is meritless. Ninth Circuit precedent—in particular, *United States v. Stewart*, 451 F.3d 1071, 1076-78 (9th Cir. 2006) [*Stewart II*]—forecloses Chan's argument.  Indeed, Chan recognizes that his challenge is "likely" foreclosed by existing precedent.  *See* ECF No. 146 at 20 ("Chan recognizes that this Court is likely bound by *Stewart II*'s holding").

The Ninth Circuit has repeatedly reaffirmed that *Stewart II* remains good law. *See, e.g.*, *United States v. Henry*, 688 F.3d at 638 ("Henry also argues that Congress did not have the power to enact § 922(o)'s prohibition against possessing machine guns pursuant to the powers delegated to Congress in the Commerce Clause. That argument fails because we already have held that the Commerce Clause authorizes § 922(o)'s machine gun possession ban." (citing *Stewart II*, 451 F.3d at 1078).  "[E]vidence of shipment or transport in interstate commerce" is "not an element the government must prove to establish guilt under § 922(o)." *United States v. Meekins*, No. 222CR00181APGEJY, 2023 WL 4748563, at *6 (D. Nev. May 9, 2023), *report and recommendation adopted*, No. 222CR00181APGNJK, 2023 WL 4746602 (D. Nev. July 24, 2023) (citing *Stewart II*, 451 F.3d at 1075-1077). Like the Ninth Circuit in *Stewart II*, "[e]very other

circuit that has reached the issue has similarly held that § 922(o) is constitutional under the Commerce Clause." *Henry*, 688 F.3d at 641.

Insofar as Chan's argument is that *Stewart II* has been undermined by intervening developments in the Supreme Court's Second Amendment jurisprudence, that argument is unavailing. Possession of a machinegun is *not* protected by the Second Amendment, as explained *supra*. Moreover, the Ninth Circuit has correctly recognized that "*Heller* 'has absolutely no impact on *Stewart*'s Commerce Clause holding." *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 982 (9th Cir. 2013) (quoting *Henry II*, 688 F.3d at 642).  Here, Congress had a rational basis for concluding that in the aggregate, possession of machineguns could substantially affect interstate commerce in machineguns. *Stewart II*, 451 F.3d at 1078.  That is sufficient.

## IV.   CONCLUSION

For the foregoing reasons, Chan's motion should be denied in full.

DATED: August 5, 2024, at Honolulu, Hawaii.

Respectfully Submitted,

CLARE E. CONNORS
United States Attorney
District of Hawaii

By     /s/ *Sara D. Ayabe*
        SARA D. AYABE
        REBECCA PERLMUTTER
        Assistant U.S. Attorneys

25

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

<u>Served Electronically through CM/ECF</u>

Craig Jerome
Assistant Federal Defender
craig_jerome@fd.org

Attorney for Defendant
Christopher Chan

DATED:  August 5, 2024, at Honolulu, Hawaii.

/s/ *Sara D. Ayabe*
U.S. Attorney's Office
District of Hawaii