IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER CHAN, <br><br> Defendant. | Case No. 22-cr-00109-DKW <br><br> **ORDER DENYING MOTION TO DISMISS UNDER THE SECOND AMENDMENT OR THE COMMERCE CLAUSE**[1] |

Defendant Christopher Chan moves to dismiss Counts 1 and 2 of the Second Superseding Indictment ("SSI"), contending that his prosecution for possession of an unregistered short-barreled rifle and/or a machinegun violates the Second Amendment to the United States Constitution. In the alternative, Chan seeks dismissal of only Count 2, asserting that Congress lacked authority under the Commerce Clause to promulgate 18 U.S.C. § 922(o)'s prohibition on possessing machineguns. Chan fails, however, to show that either a short-barreled rifle or a machinegun is an "arm" within the plain text of the Second Amendment. Moreover, as Chan himself acknowledges, his Commerce Clause challenge is foreclosed by binding Ninth Circuit precedent. Consequently, as more fully explained herein, Chan's Motion to Dismiss, Dkt. No. 146, is DENIED.

---

[1] Pursuant to Criminal Local Rule 12.2(a)(1), the Court elects to decide this matter without a hearing.

## FACTUAL & PROCEDURAL BACKGROUND[2]

On August 16, 2022, following reports of erratic behavior, Honolulu Police Department ("HPD") officers attempted to conduct a welfare check on Defendant Christopher Chan at his high-rise residence. Dkt. No. 64 at 4–7. Before they could do so, however, the officers encountered Chan exiting the parking garage in his vehicle. *Id.* at 7–8. Two officers attempted to stop Chan, who instead fled to his mother's nearby residence. *Id.* at 8–9. During that flight, Chan collided with numerous vehicles—including an HPD SUV—and nearly struck several pedestrians. *Id.* HPD officers eventually apprehended Chan attempting to exit the parking garage of his mother's high-rise residence. *Id.* at 9–10. After searching his vehicle, the officers discovered a rifle bag in the trunk containing a short-barreled firearm with no serial number or other manufacturer markings. *Id.* at 11.

Accordingly, on November 17, 2022, Chan was indicted by a federal Grand Jury on a single count of possession of an unregistered firearm—"namely, a rifle containing no serial number or appropriate manufacture markings, with a barrel length measuring approximately 10.5 inches." Dkt. No. 34 at 2. A Superseding Indictment, returned on December 22, 2022, slightly modified this charge. Dkt.

---

[2]The Court assumes the parties' familiarity with the procedural and factual background of this case and, thus, only sets forth the background necessary for an understanding of the instant issues. More detailed versions are set forth in the Court's prior Orders, *see* Dkt. Nos. 64 & 138, and will not be repeated here.

No. 47 at 2.  Later, the Government discovered that the same weapon contained an apparent "machinegun conversion device designed and intended for use in converting a weapon into a machinegun."  Dkt. No. 71 at 2.  Consequently, on May 25, 2023, the Grand Jury returned the operative Second Superseding Indictment, which charges Chan with both: (1) possession of an unregistered short-barreled rifle in violation of various provisions of the National Firearms Act ("NFA"), 26 U.S.C. §§ 5841, 5845(a)(3), 5861(d), and 5871 (Count 1); and (2) possession of a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) (Count 2).  *Id.* at 2–3.

On July 24, 2024, Chan filed a Motion to Dismiss Under the Second Amendment or the Commerce Clause.  Dkt. No. 146.  The Government responded on August 5, 2024, Dkt. No. 147, and Chan replied on August 12, 2024, Dkt. No. 149.  This Order now follows.

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Under this rule, a defendant may seek dismissal of a "defective" indictment, including those "sought under a statute that is unconstitutional on its face or as applied."  *See United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007) (citing *United States v. Lopez*, 514

U.S. 549 (1995)).  In ruling on such motions, the Court must "presume the truth of the allegations in the charging instruments" and may only consider evidence "appearing on the face of the indictment."  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).  "Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not invade the province of the ultimate finder of fact."  *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (quotation marks and citation omitted).

## DISCUSSION

In his Motion to Dismiss, Chan advances two arguments: (1) that Counts 1 and 2 must be dismissed because the relevant NFA provisions and Section 922(o) violate the Second Amendment as applied to the instant prosecution; and (2) that Count 2 must be dismissed because Section 922(o) exceeds Congress' legislative authority under the Commerce Clause.  The Court addresses each in turn.

### I.   Second Amendment

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  "Like most rights," however, "the right secured by the Second Amendment is not unlimited."  *Dist. of Columbia v. Heller*, 554 U.S. 570, 626 (2008).  Accordingly, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the

Supreme Court set forth a two-part test to determine whether firearms regulations are constitutional under the Second Amendment. This test provides:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 17 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 49 n.10 (1961)).

In other words, "*Bruen* step one involves a threshold inquiry."[3] *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023). The Court must conduct "a textual analysis" to "determin[e] whether the challenger is part of the people whom the Second Amendment protects, whether the weapon at issue is in common use today for self-defense, and whether proposed course of conduct falls within the Second Amendment." *Id.* (quotation marks and citations omitted). Weapons that are "dangerous and unusual" are not "in common use" and therefore do not fall

---

[3]The parties dispute who bears the burden at this step. *See* Dkt. No. 147 at 9; Dkt. No. 149 at 2–3. Because in either case, the Court would find that both short-barreled rifles and machineguns are "dangerous and unusual weapons" outside the protection of the Second Amendment, the Court need not and does not resolve this question. *See Rupp v. Bonta*, – F. Supp. 3d –, 2024 WL 1142061, at *8, 10 n.8 (C.D. Cal. 2024) (noting "neither *Bruen* nor *Alaniz* specified who bears the burden of proving that a weapon is protected by the Second Amendment at the step-one, plain-text stage.").

within the scope of the Second Amendment.[4]  *See Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 21.  In determining whether a weapon is dangerous and unusual, the Ninth Circuit has instructed the district courts to "consider whether the weapon has uniquely dangerous propensities and whether the weapon is commonly possessed by law-abiding citizens for lawful purposes."[5]  *Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015), *abrogated on other grounds by Bruen*, 597 U.S. 1.

If step one is satisfied, the Court will "proceed to *Bruen* step two, at which the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Alaniz*, 69 F.4th at 1128 (quotation marks and citations omitted).  To do so, "the government must produce representative analogues to demonstrate that the challenged law is consistent with a historical tradition of regulation."  *Id.*  Such comparators "need

---

[4] Citing *Teter v. Lopez*, 76 F.4th 938, 950 (9th Cir. 2023), Chan argues that the "dangerous and unusual" inquiry is more properly undertaken under *Bruen* step two.  *See* Dkt. No. 149 at 2–5.  *Teter* is no longer binding on this Court.  *See Teter v. Lopez*, 93 F.4th 1150 (9th Cir. 2024) (vacating the panel opinion and granting rehearing *en banc*).  Moreover, as another district court noted, *Teter* "was in direct tension with *Fyock*, which expressly holds that dangerous and unusual weapons are wholly unprotected by the Second Amendment[,] . . . directly contradicted *Alaniz* in situating the dangerous-and-unusual inquiry in the second part of the *Bruen* test[,] [a]nd [] was out of step with most courts that have considered the issue."  *Rupp*, – F. Supp. 3d –, 2024 WL 1142061, at *8 n.5; *see also United States v. Berger*, – F. Supp. 3d –, 2024 WL 449247, at *2–6 (E.D. Pa. 2024) (rejecting the same argument).  As such, the Court undertakes this analysis under *Bruen* step one.  *See Bruen*, 597 U.S. at 32 (undertaking the "in common use" analysis at step one); Dkt. No. 149 at 3 (agreeing that "showing that a firearm is not in common use is the same thing as showing it is dangerous and unusual.").

[5] Chan appears to concede that both short-barreled rifles and machineguns are "dangerous" for the purposes of the instant analyses.  *See* Dkt. No. 149 at 13 ("In the context of firearms, moreover, what the 'dangerous and unusual' test really boils down to is whether the firearm is unusual.  All firearms are dangerous.").

not be a historical twin," but rather must be "relevantly similar" by "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* (quotation marks and citations omitted); *accord United States v. Rahimi*, 602 U.S. –, 144 S. Ct. 1889 (2024) ("The law must comport with the principles underlying the Second Amendment, but it need not be a dead ringer or a historical twin." (quotation marks and citation omitted)).

  a. **<u>Count 1: Short-Barreled Rifles</u>**

Chan first challenges Count 1, asserting that: (1) short-barreled rifles are "arms" within the plain text of the Second Amendment; and (2) that the Government cannot provide a Founding-era analogue which is "relevantly similar" to the provisions of the NFA at issue. Dkt. No. 146 at 3–17. With regard to *Bruen* step one, the parties principally dispute whether short-barreled rifles constitute "dangerous and unusual weapons"[6] that fall outside the scope of the Second

---

[6]Chan contends that the "dangerous and unusual" test is conjunctive—that is, that "[a] weapon may not be banned unless it is *both* dangerous *and* unusual." Dkt. No. 146 at 5 (quoting *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring)); Dkt. No. 149 at 13–14. Notably, however, Chan cites *only* to Justice Alito's non-binding concurrence in *Caetano* for this proposition. *See* Dkt. No. 146 at 5. Moreover, the lower courts have split over precisely this issue. *Compare Nat'l Ass'n for Gun Rts. v. Lamont*, 685 F. Supp. 3d 63, 89–91 (D. Conn. 2023) (finding that neither *Bruen* nor *Heller* compel a conjunctive interpretation), *with Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 664 F. Supp. 3d 584, 595 (D. Del. 2023) (holding that because "[t]he test is 'dangerous and unusual,' [] to fall outside the Second Amendment's protection, a weapon must check both boxes."). Here, because the Court finds that short-barreled rifles and machineguns are both dangerous and unusual, it need not address whether both elements are necessary under *Bruen*.

Amendment.[7]  Chan claims that because there are "532,725 short-barreled rifles [] registered and lawfully possessed in the United States," the statistics command a finding that such weapons are in "common use."[8]  Dkt. No. 146 at 6 (quoting *Caetano*, 577 U.S. at 420 (Alito, J., concurring)).  The Government counters that registered short-barreled rifles make up a miniscule fraction of firearms in the United States and that Chan's arguments "'run[] smack into *Heller*'s finding that short-barreled shotguns are not' commonly used for self-defense."  Dkt. No. 147 at 6–7 (quoting *United States v. Miller*, 2023 WL 6300581, at *2 (N.D. Tex. Sept. 27, 2023)).

Joining every other district court to have considered this issue in the wake of *Bruen*, the Court agrees with the Government that short-barreled rifles are "dangerous and unusual weapons" that fall outside the protection of the Second Amendment.[9]  As an initial matter, it is far from clear that the number of lawfully

---

[7]The Government does not appear to contest that Chan is an American citizen, and thus, part of the "people" covered by the Second Amendment.  *See* Dkt. No. 146 at 3; Dkt. No. 147.

[8]Chan also claims that because the ATF issued a Final Rule in 2023 which "amended[] the definition of 'rifle' in the NFA to reclassify pistols equipped with stabilizing braces as short-barreled rifles," there are now "at least 3 million . . . short-barreled rifles" possessed "for lawful purposes."  Dkt. No. 146 at 6.  This method of calculation, however, is unconvincing, particularly in light of ongoing litigation over the Final Rule.  *See Firearms Regul. Accountability Coal., Inc. v. Garland*, – F.4th –, 2024 WL 3737366, at *13 (8th Cir. 2024) (finding that plaintiffs were likely to succeed on their claims that the Final Rule was arbitrary and capricious and remanding to the district court to consider the scope of injunctive relief); *Mock v. Garland*, 2024 WL 2982056, at *5–6 (N.D. Tex. June 13, 2024) (vacating the Final Rule as unlawful).

[9]At least, the Court is not aware of a single case holding otherwise.  *See, e.g.*, *Miller*, 2023 WL 6300581, at *1–4; *United States v. Danielson*, 2023 WL 5288049, at *4–5 (D. Minn. Aug. 17, 2023); *United States v. Saleem*, 659 F. Supp. 3d 683, 692–94 (W.D.N.C. 2023); *United States v.*

possessed short-barreled rifles should be the primary consideration in determining whether such weapons are "unusual and dangerous" within the meaning of the Second Amendment. Although Chan cites to Justice Alito's concurrence in *Caetano* that the "relevant statistic is that hundreds of thousands of [weapons] have been sold to private citizens," this reasoning was not adopted by the majority. *See* Dkt. No. 146 at 6; *Caetano*, 577 U.S. at 420. Moreover, Chan does not provide any reason why Justice Alito's approach should be followed, other than generally concluding that "it is logical, coherent, and correct." *See* Dkt. No. 149 at 8; *see also United States v. Lane*, 689 F. Supp. 3d 232, 251 (E.D. Va. 2023) (declining to follow Justice Alito's *Caetano* concurrence).

Even assuming that this inquiry is proper, however, the overall number of lawfully possessed short-barreled rifles says little about whether such weapons are "in common use," let alone "in common use today for self-defense." *See Bruen*, 597 U.S. at 32 (quotation marks and citations omitted). Indeed, as the Government points out, 532,725 registered short-barreled rifles may amount to as little as ".13%

---

*Royce*, 2023 WL 2163677, at *2–3 (D.N.D. Feb. 22, 2023); *United States v. Myers*, 2024 WL 2924081, at *3–4 (D. Nev. June 10, 2024); *United States v. Rush*, 2023 WL 403774, at *2 (S.D. Ill. Jan. 25, 2023); *United States v. Broadbent*, 2023 WL 6796468, at *4 (E.D. Cal. Oct. 13, 2023); *United States v. Shepherd*, 2024 WL 71724, at *4–5 (S.D. Miss. Jan. 5, 2024); *United States v. DeFelice*, 2024 WL 3028425, at *6 (D. Conn. June 17, 2024); *United States v. Williams*, 695 F. Supp. 3d 1295, 1299–1302 (N.D. Okla. 2023). Nor, despite Chan's lengthy Reply, does he address a single one of these cases—many of which were flagged by the Government in its Opposition. *See* Dkt. No. 147 at 5–6 n.2; *see generally* Dkt. No. 149.

of all firearms in the United States."[10]  Dkt. No. 147 at 7.  As such, once put in context, the numbers Chan cites are far from sufficient to render short-barreled rifles "typically possessed by law-abiding citizens for lawful purposes." *See Heller*, 554 U.S. at 625; *see also United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (noting that "short-barreled rifles" are regulated by the NFA precisely because they are the type of "concealable weapon" which is "likely to be used for criminal purposes"); *Hollis*, 827 F.3d at 449–50 (surveying cases and finding the threshold for "common use" to be in the millions).  Consequently, the Court does not find that short-barreled rifles fall within the plain text of the Second Amendment.

Moreover and perhaps more importantly, beyond the numbers, the Supreme Court has *repeatedly* held that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, *such as short-barreled shotguns*."  *See Heller*, 554 U.S. at 625 (emphasis added); *United States v. Miller*, 307 U.S. 174, 178 (1939) ("[W]e cannot say that the Second Amendment guarantees the right to keep and bear [a short-barreled

---

[10]Chan responds to this statistic by asserting that the number of lawfully possessed short-barreled rifles has been artificially lowered by the onerous registration requirements of the NFA.  *See* Dkt. No. 149 at 6–7.  Any speculation, however, as to the number of short-barreled rifles that might otherwise be possessed does not provide grounds for this Court to find *today* that such weapons are commonly possessed by law-abiding citizens for lawful purposes, such as self-defense.  *See Caetano*, 577 U.S. at 420 (Alito, J., concurring); *see also Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) (noting the *Heller* majority rejected a similar argument).

shotgun]."). Although Chan tries to overcome this by arguing that *Miller* and *Heller* no longer control, he provides no reason beyond the purported depth of the Supreme Court's Second Amendment analyses and the "different type of weapon involved here" as to why this should be so. *See* Dkt. No. 146 at 9–10; Dkt. No. 149 at 14–18. Such arguments are not convincing, particularly given that the Supreme Court has explicitly characterized *Bruen* as being "consistent with *Heller*," *see* 597 U.S. at 19, and federal courts have generally extended the principle articulated in *Miller* and *Heller* with identical force to short-barreled rifles.[11] *See, e.g.*, *Myers*, 2024 WL 2924081, at *3 ("*Heller's* statement that the Second Amendment does not apply to short-barreled shotguns applies with equal force to short-barreled rifles."); *Rush*, 2023 WL 403774 at *2 ("There is no reason the exclusion from Second Amendment protection of 'dangerous and unusual firearms' should not apply as well to short-barreled rifles . . . *Bruen* did not change this"); *United States v. Cox*, 906 F.3d 1170, 1185–86 (10th Cir. 2018) (explaining that there is "no meaningful distinction" between a short-barreled shotgun and short-barreled rifle as each is "a long gun with a shortened barrel" which "is both dangerous, because its concealability fosters its use in illicit activity, and unusual,

---

[11]To the extent that Chan characterizes *Miller* and *Heller*'s holdings regarding short-barreled weapons as mere "dicta," *see* Dkt. No. 149 at 15, courts "do not treat considered dicta from the Supreme Court lightly." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc). Indeed, rather than "blandly shrug them off because they were not a holding," the lower courts "must accord [them] appropriate deference . . . as prophecy of what that Court might hold." *Id.*

because of its heightened capability to cause damage." (quotation marks and citations omitted)).  Accordingly, this Court also follows the reasoning outlined in *Miller* and *Heller* and joins the "[n]umerous lower courts [which] have held, post-*Bruen*, that unregistered short-barreled rifles are not protected by the Second Amendment because they are 'dangerous and unusual weapons' which are not typically possessed by law-abiding citizens for lawful purposes." *Myers*, 2024 WL 2924081, at *3.  Chan's motion to dismiss Count 1 of the SSI under the Second Amendment is therefore DENIED.[12]

### b. Count 2: Machineguns

Next, Chan challenges Count 2 of the SSI, similarly asserting that: (1) machineguns are "arms" protected by the Second Amendment; and (2) the Government cannot provide a historical analogue requiring complete disarmament of any type of firearm.  *See* Dkt. No. 146 at 3–17.  This argument, however, has at least one glaring issue.  As Chan acknowledges, in *United States v. Henry*, 688 F.3d 637 (9th Cir. 2012), the Ninth Circuit held that because "machine guns are highly 'dangerous and unusual weapons' that are not 'typically possessed by law-

---

[12]Because the Court finds that short-barreled rifles are "dangerous and unusual weapons" which fall outside the scope of the Second Amendment, it need not and does not reach whether Chan's conduct is covered by the plain text of the Second Amendment or whether the Government has provided a sufficient historical analogue under *Bruen* step two.  *See* Dkt. No. 146 at 3; Dkt. No. 147 at 10; Dkt. No. 149 at 8; *Alaniz*, 69 F.4th at 1128.

abiding citizens for lawful purposes' . . . the Second Amendment does not apply to machine guns." *Id.* at 640.

Undeterred, Chan asserts that because *Henry* applied the pre-*Bruen* interest-balancing approach, "the Court should view *Henry* as overruled" and "no longer binding on this Court." *See* Dkt. No. 146 at 7–8; *see also* Dkt. No. 149 at 18–21. This argument, however, lacks merit. In the Ninth Circuit, "where the reasoning or theory of prior circuit authority is *clearly irreconcilable* with the reasoning or theory of intervening higher authority, a [court] should consider itself bound by the later and controlling authority and should reject the prior circuit opinion as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (emphasis added). "The clearly irreconcilable requirement is a high standard . . . [i]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quotation marks and citations omitted). Rather, "[s]o long as the court can apply [the] prior circuit precedent without running afoul of the intervening authority it must do so." *Id.* (quotation marks and citation omitted).

Here, there is no indication that *Henry* is "clearly irreconcilable" with *Bruen* or its progeny. Notably, contrary to Chan's assertions, the *Henry* court never reached the interest-balancing step assertedly prohibited by *Bruen*. *See Henry*, 688

F.3d at 640; Dkt. No. 146 at 8.  Rather, the Ninth Circuit determined that machineguns are "dangerous and unusual weapons . . . not typically possessed by law-abiding citizens for lawful purposes" under step one of the pre-*Bruen* test, which required it to determine whether Section 922(o) came within the "scope of the [Second Amendment] right as originally understood . . . based on its historical meaning." *Henry*, 688 F.3d at 640; *Bruen*, 597 U.S. at 18 (quotation marks and citations omitted).  Far from being "clearly irreconcilable" with *Bruen*, the Supreme Court explicitly *affirmed* this approach, explaining that it was "broadly consistent with *Heller*." *Bruen*, 597 U.S. at 19.  As a result, *Henry* remains binding precedent, such that this Court must find that machineguns are "dangerous and unusual weapons . . . not entitled to Second Amendment protection."[13] *Henry*, 688 F.3d at 640; *cf. United States v. Duarte*, 101 F.4th 657, 664–666 (9th Cir. 2024) (finding Ninth Circuit firearms precedent no longer controlled where it "did not follow the textually and historically focused 'mode of analysis' that *Bruen* established"), *vacated and reh'g en banc granted*, 108 F.4th 786 (9th Cir. 2024).

Even if *Henry* did not control,[14] the Court would still find that machineguns

---

[13] Indeed, as far as the Court is aware, every other district court within this Circuit to have considered this issue has similarly found that *Henry* remains good law.  *See, e.g.*, *United States v. Kittson*, 2023 WL 5015812, at *2 (D. Or. Aug. 7, 2023); *Broadbent*, 2023 WL 6796468, at *4; *Cox v. United States*, 2023 WL 4203261, at *7 (D. Alaska June 27, 2023).

[14] Of course, even if the Court was not bound by *Henry*, it would be bound by *Heller,* which indicated that it would be "startling" for the Second Amendment to encompass machineguns. *See Heller*, 554 U.S. at 624, 627.

are "dangerous and unusual weapons", which fall outside the protection of the Second Amendment. As before, Chan relies on statistics, claiming that because there are "741,146 lawfully registered and possessed machineguns," such weapons are necessarily in "common use" by "law-abiding citizens for lawful purposes today."[15] Dkt. No. 146 at 6–7 (citing *Caetano*, 577 U.S. at 420 (Alito, J., concurring)). This argument, however, fails for the same reasons already discussed above. *See supra* 8–10. Even presuming that the numerical approach is the correct inquiry, the number of machineguns, in the abstract, does not establish such weapons are in common use by law-abiding citizens for lawful purposes such as self-defense. Indeed, when evaluated in context, it appears that the precise opposite is true. *See United States v. Wilson*, 2024 WL 1144251, at *3 (N.D. Tex. Mar. 15, 2024) ("While correct that the number of civilian-owned machineguns has increased to about 740,000 as of May 2021 . . . this amount remains too insignificant for machineguns to be considered in common use, especially when factoring in the total increase in firearm usage nationwide"); *United States v. Simien*, 655 F. Supp. 3d 540, 553 (W.D. Tex. 2023) ("Although the number of civilian-owned machineguns has increased to about 740,000, this amount—which

---

[15]Chan claims that the number of machineguns may be even higher due to the "estimated 280,000 to 520,000 legal bump stock devices in circulation in the United States." Dkt. No. 146 at 7. This argument, however, is unavailing in light of the Supreme Court's recent decision in *Garland v. Cargill*, 602 U.S. 406 (2024), which held that such devices are not machineguns. *See* Dkt. No. 147 at 17 n.14.

is less than .2% of total firearms in the United States—remains too insignificant for machineguns to be considered in common use."). As such, in line with nearly every district court to have addressed Section 922(o) post-*Bruen*, this Court concludes that machineguns remain "dangerous and unusual weapons" that are not entitled to the protections of the Second Amendment.[16] Chan's motion to dismiss Count 2 of the SSI pursuant to the Second Amendment is therefore DENIED.[17]

## II. Commerce Clause

Chan further argues that even if Count 2 survives *Bruen*, it must be dismissed, as Section 922(o) exceeds Congress' legislative power under the Commerce Clause. *See* Dkt. No. 146 at 17–21. According to Chan, Section 922(o) offends the Commerce Clause because it "does not contain an express interstate commerce element" and the "simple possession of a firearm, even an

---

[16] *See, e.g.*, *Lane*, 689 F. Supp. 3d at 250–53; *Kittson*, 2023 WL 5015812, at *2–3; *Cox*, 2023 WL 4203261, at *7; *Simien*, 655 F. Supp. 3d at 553; *Wilson*, 2024 WL 1144251, at *3; *Berger*, – F. Supp. 3d –, 2024 WL 449247, at *7; *United States v. Kazmende*, 2023 WL 3872209, at *2–4 (N.D. Ga. May 17, 2023); *DeWilde v. United States*, 2023 WL 4884582, at *6–8 (D. Wyo. July 17, 2023); *United States v. Dixon*, 2023 WL 2664076, at *2–3 (N.D. Ill. Mar. 28, 2023); *United States v. Fisher*, 2024 WL 589115, at *1–3 (W.D.N.C. Feb. 13, 2024); *United States v. Sturgeon*, 2023 WL 6961618, at *3 (E.D. Ky. Oct. 20, 2023); *United States v. Alsenat*, – F. Supp. 3d –, 2024 WL 2270209, at *3–7 (S.D. Fla. 2024); *United States v. Hicks*, 2024 WL 1840326, at *5 (W.D. La. Apr. 26, 2024); *United States v. Hernandez*, – F. Supp. 3d –, 2024 WL 964213, at *4–5 (D. Del. 2024); *United States v. Berríos-Aquino*, 2024 WL 1468488, at *5 (D.P.R. Apr. 4, 2024); *United States v. Mitchell*, – F. Supp. 3d –, 2024 WL 2272275, at *3–5 (N.D. Ohio 2024); *United States v. Bachmann*, 2024 WL 730489, at *2–3 (M.D. Fla. Feb. 22, 2024); *United States v. Cousar*, 2024 WL 1406898, at *11–13 (D. Kan. Apr. 2, 2024); *but see, e.g.*, *United States v. Morgan*, 2024 WL 3936767, at *1–2 (D. Kan. Aug. 26, 2024).

[17] As before, because the Court concludes that machineguns do not fall within the plain text of the Second Amendment, it need not and does not reach the second step of the *Bruen* test. *See supra* n.12.

automatic firearm, is the type of noneconomic, private conduct that the Commerce Clause cannot reasonably reach."  Dkt. No. 146 at 18, 20.  As such, Chan claims that his prosecution under Section 922(o) is unconstitutional and must be dismissed.

As Chan recognizes, however, this argument is again foreclosed by Ninth Circuit precedent—specifically, *United States v. Stewart*, 451 F.3d 1071, 1078 (9th Cir. 2006), which upheld Section 922(o)'s constitutionality under the Commerce Clause.  *See* Dkt. No. 146 at 20 ("Chan recognizes that this Court is likely bound by *Stewart* []'s holding."); *Henry*, 688 F.3d at 642 (explaining that despite *Heller*, "*Stewart*'s Commerce Clause holding remains binding precedent in our circuit.").  Consequently, this Court must "reject [Chan's] claim that Congress did not have authority to enact § 922(o)'s ban on machineguns pursuant to the Commerce Clause."  *Henry*, 688 F.3d at 642.  Chan's alternative motion to dismiss Count 2 on Commerce Clause grounds is, therefore, DENIED.

## **CONCLUSION**

For the reasons set forth herein, Chan's Motion to Dismiss Under the Second Amendment or the Commerce Clause, Dkt. No. 146, is DENIED.

IT IS SO ORDERED.

DATED: September 3, 2024 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge